USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD G. SCHIAVONE,

                Plaintiff,

-against-

NEW YORK STATE OFFICE OF RENT
ADMINISTRATION AND NEW YORK STATE
DEPARTMENT OF CIVIL SERVICE,

                Defendants.

No. 18-cv-130 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Richard Schiavone brings this action pursuant to the Americans with Disabilities Act ("ADA"); New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 – 97; and New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 – 31 against Defendants New York State Division of Housing and Community Renewal Office of Rent Administration ("DHCR") and New York State Department of Civil Service ("DCS"). Defendants move to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## BACKGROUND

    The following facts are taken from Plaintiff's First Amended Complaint ("Complaint," ECF No. 11) and attached documents as well as matters of which the Court may take judicial notice. These facts are accepted as true for the purposes of this motion.

    Prior to his employment with DHCR, Plaintiff fell and injured himself at work in February 2015. (Compl. p. 31.) Following this injury, Plaintiff was prescribed pain medication

and was informed that he should not drive after taking that medication. (*Id.*) The fall caused Plaintiff disability in his lower back, elbows, knees, and left wrist. (*Id.* p. 4.)

On December 31, 2015, Plaintiff was hired as a rent examiner for the DHCR located at Gertz Plaza in Jamaica, Queens. (*Id.* pp. 5, 35.) Sometime after Plaintiff was hired, he submitted a written request to his supervisor for an ergonomic chair, but his supervisor informed him that DHCR no longer accepted such requests in writing. (*Id.*) Accordingly, Plaintiff and his supervisor asked "many times for the chair to help [his] back." (*Id.*) Plaintiff apparently never received an ergonomic chair.

After working at DHCR for a few months, Plaintiff decided that traveling to Queens for work was too expensive, took too much time, and was too difficult with his injuries. (*Id.* p. 42.) Plaintiff requested a transfer to DHCR's White Plains location, closer to his home in New Rochelle, New York. (*Id.* pp. 5, 31, 42.) Ilan Halfi, another DHCR employee and presumably one of Plaintiff's supervisors, said that he was "sorry to hear that the commute [was] a hardship" but denied Plaintiff's request because Plaintiff was a probationary employee. (*Id.* p. 41.) "Civil Service dictates that a transfer cannot be made before [Plaintiff] completes [his] probation." (*Id.*) Shortly after receiving this email, and based on his understanding of the employer handbook, Plaintiff resigned from his rent examiner position on May 6, 2016[1] and issued a certified letter to DCS requesting to be placed on the active rent examiner list. (*Id.* pp. 15, 31.) Plaintiff apparently hoped that his placement on the list would allow him to attain a rent examiner position closer to his home. (*Id.*) DCS denied Plaintiff's request because he "quit [his] job." (*Id.* p. 15.)

---

[1] As of the date of his resignation, Plaintiff had worked for DHCR for less than five months. (*Id.* pp. 15, 31.)

Plaintiff alleges that Defendants' actions were in retaliation "for an incident at the White Plains office in 1987, involving asbestos and fiberglass." (*Id.*)

On March 1, 2017, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") based on Defendants' conduct. (*Id.* p. 18.) The EEOC closed its file and issued a notice of right to sue letter on October 11, 2017. (*Id.* p. 17.)

Plaintiff initiated the action currently before the Court on January 8, 2018 (ECF No. 1) and filed his Amended Complaint ("Complaint") on March 16, 2018. Plaintiff requests that the Court direct Defendants to reemploy him, to reasonably accommodate his disability, and to pay his lost wages and benefits since May 6, 2016. (*Id.* p. 6.)

## LEGAL STANDARD ON A MOTION TO DISMISS

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similar to Rule 12(b)(1), a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). The court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

Finally, "where, as here, a plaintiff proceeds *pro se,* the court must 'construe [ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].' " *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). Yet, " 'the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.' " *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

Defendants assert that Plaintiff's Complaint must be dismissed because Plaintiff's claims are barred by Eleventh Amendment immunity and the Court therefore lacks subject matter jurisdiction. Defendants also argue that Plaintiff failed to exhaust his administrative remedies for some of his claims and failed to allege sufficient facts to show that he had an ADA qualifying disability or that he participated in a protected activity.[2]

### I. Eleventh Amendment Immunity

The Eleventh Amendment protects states from suit in federal court unless the states waive their Eleventh Amendment immunity or Congress otherwise abrogates the immunity. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 – 45 (1993); *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks omitted).

Here, both Defendants are New York agencies and "arms of [the] state." *Helgason v. Certain State of N.Y. Emps.*, No. 10-CV-5116(PAC)(JCF), 2011 WL 4089913, at *7 (S.D.N.Y. June 24, 2011) (holding that the Eleventh Amendment bars suits against "state agencies, such as DHCR"); *Melrose v. N.Y. State Dep't of Health Office of Prof'l Med. Conduct*, No. 05-CV-8778(SCR)(LMS), 2009 WL 211029, at *6 (S.D.N.Y. Jan. 26, 2009) (granting the defendant's motion to dismiss in part because DCS was immune under the Eleventh Amendment); *Stokes v. N.Y. State Dep't of Corr. Servs.*, 80-CV-1364(CLB), 1981 WL 27028, at *9 (S.D.N.Y. June 29, 1981) (holding that DCS is a state agency entitled to immunity under the Eleventh Amendment).

---

[2] Defendants raise a third basis for dismissal—failure to exhaust. Because the Court dismisses Plaintiff's Complaint on other grounds, it need not conduct an exhaustion analysis.

Therefore, the Court must next determine whether New York has waived or Congress has abrogated New York's immunity under Titles I or V of the ADA,[3] NYSHRL, or NYCHRL.

New York and New York agencies are protected by Eleventh Amendment immunity from suits for money damages brought under Titles I (discrimination) and V (retaliation) of the ADA. In *Bd. of Tr. of Univ. of Ala. v. Garrett*, the Supreme Court held that Congress did not abrogate states' Eleventh Amendment immunity against discrimination claims for money damages brought under Title I of the ADA. 531 U.S. 356, 374 (2001). Courts in the Second Circuit "have consistently extended *Garrett*'s holding to ADA Title V retaliation claims" predicated on ADA Title I discrimination claims. *Quadir v. N.Y. State Dept. of Labor*, 39 F. Supp. 3d 528, 536–37 (S.D.N.Y. 2014); *see Casarella v. N.Y. State Dep't of Transp.*, 16-CV-9531(NSR), 2018 WL 4372674, at *4 (S.D.N.Y. Sept. 13, 2018); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 408 (E.D.N.Y. June 2, 2010); *Moshenko v. State Univ. of N.Y. at Buffalo*, No. 07-CV-0116, 2009 WL 5873236, at *3 (W.D.N.Y. Sept. 16, 2009); *Salvador v. Lake George Park Comm'n*, 2001 WL 1574929, *3 (N.D.N.Y.2001), *aff'd.,* 35 F. App'x 7 (2d Cir. 2002).

Turning to Plaintiff's state and municipal claims, New York has not waived its Eleventh Amendment immunity in NYSHRL or in NYCHRL. *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("The City of New York does not have the power to abrogate the immunity of the state, and we have found no evidence that the state has consented to suit in federal court under the NYCHRL."); *Dimps v. N.Y. State Office of Mental Health*, 777 F. Supp. 2d 659 (S.D.N.Y. 2011).

---

[3] Title I of the ADA prohibits employment discrimination against employees with disabilities and Title V of the ADA prohibits employers from retaliating against their employees for engaging in protected activity. 42 U.S.C. §§ 12112(a), 12203; *Padilla v. New York State Dept. of Labor*, No. 09-CV-5291*CM)(RLE), 2010 WL 3835182, at *2 (S.D.N.Y. 2010).

Accordingly, because Defendants are immune under the Eleventh Amendment for Plaintiff's ADA claims for money damages and for Plaintiff's claims under NYCHRL and NYSHRL, the Court lacks constitutional power to adjudicate those claims; they must be dismissed for lack of subject matter jurisdiction. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). Plaintiff's remaining claims are for injunctive relief under the ADA. *See Garrett*, 531 U.S. at 374 n.9 (noting that private litigants can still recover injunctive relief from states for ADA violations).

## II. ADA Claims for Injunctive Relief

Plaintiff alleges that Defendants, his former employers, discriminated against him by failing to accommodate his request for an ergonomic chair and a transfer and then retaliated against him in violation of the ADA. For relief, Plaintiff requests that the Court direct Defendants to reemploy Plaintiff and to reasonably accommodate his disability.

### A. Employment Discrimination

Title I of the ADA proscribes discrimination against individuals with disabilities in employment and hiring. 42 U.S.C. § 12101. Where, as here, Plaintiff alleges that his employer failed to provide a reasonable accommodation for his disability, a Plaintiff must demonstrate that:

> (1) [the] plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, [the] plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*Gomez v. N.Y. City Police Dep't*, 191 F. Supp. 3d 293, 301 (S.D.N.Y. 2016) (citing *McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013)). "Disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more the major life activities

of [an] individual." 42 U.S.C. § 12102(2). In deciding whether an activity qualifies as a major life activity, the issue is "whether that activity is a significant one within the contemplation of the ADA." *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 642 (2d Cir. 1998). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, learning, breathing, and working. 29 C.F.R. § 1630.2(i).

In this case, Plaintiff fails to establish a facially plausible claim for discrimination under the ADA. First, Plaintiff's Complaint does not include facts sufficient to show that he had an ADA qualifying disability. Plaintiff does not allege that he was not able to engage in major life activities. He drove to work and, presumably, performed his job functions for months until he resigned. Plaintiff alleges no other facts to suggest that Plaintiff's injuries prevented him from performing major life activities.

Assuming that Plaintiff plead facts to plausibly establish that he has a disability, Plaintiff's Complaint does not sufficiently allege that Plaintiff could perform the essential functions of his job with reasonable accommodation. Plaintiff states that Defendants never responded to his requests for the ergonomic chair for his Queens office, but Plaintiff's Complaint contains no other context. It is unclear from Plaintiff's Complaint whether this accommodation would have allowed Plaintiff to perform the essential functions of his job. In fact, because Plaintiff requested a transfer to the White Plains location due, in part, to his injuries, this Court assumes that Plaintiff's stance is that the ergonomic chair would not have allowed him to perform the essential functions of his job. Plaintiff also failed to sufficiently allege that a transfer would have allowed him to perform his essential job functions.

Moreover, Plaintiff's Complaint does not plausibly establish that his transfer request was a reasonable accommodation. While there is not a clear definition of reasonable accommodation, *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1516 (2d Cir. 1995), courts have held that "[n]othing in the ADA requires an employer to abandon its legitimate, nondiscriminatory company policies defining job qualifications, prerequisites, and entitlements to intra-company transfers." *Felix v. N.Y. City Transit Auth.*, 154 F. Supp. 2d 640, 655 (S.D.N.Y. 2001) (quoting *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998)); *see Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("Under the ADA, an employer is not required to give what it does not have."); *Shannon v. N.Y. City Transit Auth.*, 189 F. Supp. 2d 55, 66 (S.D.N.Y. 2002) ("[R]eclassifications which require an "exception" or "preference" are not mandated by the ADA."); *Parisi v. Coca-Cola Bottling Co.*, 995 F. Supp. 298, 304 (E.D.N.Y. 1998) ("[T]here is no general duty to transfer a disabled employee unable to perform one job to another available position, absent some showing of a contractual right."). Plaintiff's Complaint demonstrates that transferring Plaintiff from Queens to White Plains would have been an exception to Defendants' policy. Documents submitted with Plaintiff's Complaint show that Defendants refused Plaintiff's transfer request because Plaintiff was still a probationary employee and a policy against transferring employees before the end of their probation. (Compl. p. 41.) Additionally, Defendants state that a transfer would leave a vacancy in Queens and that there was "physically no space for" or any need for another employee in White Plains. (*Id.*) Plaintiff's Complaint contains no other facts to show, or even suggest, that his transfer request was a reasonable accommodation.

9

Thus, because Plaintiff's Complaint does not contain sufficient facts on its face to plausibly establish at least two of the four elements required for an ADA discrimination claim, Plaintiff's discrimination claim is dismissed.

**B.      Retaliation**

Title V of the ADA prohibits employers from retaliating against employees for engaging in protected activities. 42 U.S.C. § 12203(a); *see Warren v. Goord*, No. 06-CV-3349, 2008 WL 5077004, at *1 – 2 (2d Cir. Nov. 26, 2008). For an ADA retaliation claim to survive a motion to dismiss, a plaintiff must allege sufficient facts to plausibly show that "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman– Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999).

Here, to support his retaliation claim, Plaintiff states that he was "retaliated against for an incident at the White Plains office in 1987, involving aspestos [sic] and fiberglass." (Compl. p. 15.) This conclusory statement is the entirety of Plaintiff's retaliation claim. He provides no other information about the 1987 incident and his Complaint contains no other facts sufficient to establish a facially plausible retaliation claim. Plaintiff's principal protected activity appears to be his EEOC claim, which Plaintiff filed after any alleged retaliation. However, Defendants could not be aware of the 2017 EEOC claim at the time of their failure to respond to Plaintiff's ergonomic chair request in 2016 or their 2016 denial of his transfer request because the EEOC claim had not been filed.

If the Court considered Plaintiff's request to Defendants for a transfer to be a protected activity, Plaintiff's retaliation claim would still fail. Plaintiff fails to sufficiently establish that he

endured an adverse employment action. Plaintiff presumably argues that Defendants' failure to grant his transfer request was an adverse employment action. Although failure to provide an accommodation is an adverse employment action, *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000), Plaintiff's request for a transfer was not a reasonable accommodation. *See supra* II(A). Employers have no duty under the ADA to grant employees' transfer requests. *See Felix*, 154 F. Supp. 2d at 655; *Parisi*, 995 F. Supp. at 304. Plaintiff's resignation from his position was not an adverse employment action, either. Courts generally presume that an employee's decision to resign from a position is voluntary. *Stewart v. Gates*, 786 F. Supp. 2d 155, 167 (D.D.C. 2011). In certain cases, an employee may demonstrate that his resignation was not voluntary and was in fact constructive discharge. *Id.*; *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 299 (S.D.N.Y. 2009). "Constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Stofsky*, 635 F. Supp. 2d at 299. Here, Plaintiff's Complaint contains no facts that suggest Defendants deliberately made his working conditions intolerable, let alone so intolerable that he was forced to resign. Therefore, his resignation was voluntary and was not an adverse employment action. *See Spector v. Bd. of Tr. of Cmty.-Technical Colls.*, No. 06-CV-129(JCH), 2007 WL 4800726, at *9 (D. Ct. Dec. 27, 2007) (holding that the plaintiff's decision to resign from an organization position because he felt that there was poor communication about the organization's activities was not an adverse employment action).

Because Plaintiff states no retaliation claim beyond making one conclusory statement and because Plaintiff's Complaint contains insufficient facts to support a facially plausible claim for retaliation, Plaintiff's retaliation claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint is GRANTED.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 22 and to dismiss this case. The Clerk of the Court is also directed to mail a copy of this opinion to Plaintiff's address as listed on ECF and to show proof of service on the docket.

Dated: November 2, 2018
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge